## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | **CHAPTER 11** |
| | § | |
| **ALAMO IRON WORKS, INC., et al.**[1] | § | **CASE NO. 10-51269-RBK** |
| | § | |
| **Debtors.** | § | |
| | § | **(Joint Administration Pending)** |

## EMERGENCY APPLICATION TO EMPLOY
## BDO CONSULTING CORPORATE ADVISORS, LLC
## AS FINANCIAL CONSULTANTS AND CHIEF RESTRUCTURING OFFICER
## TO THE DEBTORS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Alamo Iron Works, Inc. ("AIW"), Southwest Wholesale Supply Co., Inc., Alamo Advertising, Inc. and Alamark Technologies, L.P. (collectively, the "Debtors"), the Debtors in the above captioned cases (the "Cases"), hereby file this *Application to Employ BDO Consulting Corporate Advisors, LLC as Financial Consultants and Chief Restructuring Officer to the Debtors* (the "Motion"). In support of the Application, the Debtors respectfully represents as follows:

## I.      JURISDICTION, VENUE AND BACKGROUND

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

---

1 The Debtors are the following entities:  Alamo Iron Works, Inc., Southwest Wholesale Supply Co., Inc., Alamo Advertising, Inc., and AlaMark Technologies, L.P.

## II.    **BACKGROUND**

2.      On April 5, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") in the Western District of Texas, San Antonio Division.

3.      The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No creditors' committee has been appointed in these Cases by the United States Trustee. Further, no trustee or examiner has been requested or appointed.

4.      The Debtors now seek to employ the professional firm of BDO Consulting Corporate Advisors, LLC ("BCCA") as Financial Consultants and Chief Restructuring Officer to the Debtors. The name of the principal at BCCA serving as Debtors' Chief Restructuring Officer is as follows:

> Anthony F. Wolf, Managing Director
> BDO Consulting Corporate Advisors, LLC
> 700 North Pearl St., Suite 2000
> Dallas, Texas 75201
> Telephone: 214-969-7007
> E-mail: twolf@BCCAca.com

5.      As of February 12, 2010, the Debtors engaged BCCA to serve as a Financial Advisor. BCCA was engaged to provide services including a thorough review of the business, refining its 13 week cash forecast, analyzing Company viability and other typical duties of a Financial Advisors. The Debtors paid BCCA a $40,000 initial retainer for these services. The Retention Agreement is attached as **Exhibit A**. Prior to the Petition Date the Debtors paid BCCA at total of $278,456.38 including the retainer and BCCA held a retainer of $89,024.25. All payments were made in advance of the work.

6.    The Debtors have determined that it is in the best interest of their estates and creditors to continue the professional services of BCCA post-petition. The postpetition agreement will become effective as of the petition date. The Debtor seeks to retain BCCA postpetition to serve as Chief Restructuring Officer ("CRO"). Specifically, Tony Wolf will serve as CRO and Bob Starzyk and Greg Baracato will serve as Deputy Chief Restructuring Officers ("Deputy CROs").

7.    The duties to be completed by the BCCA include, assisting the Debtors with cash management and cash flow reporting process, managing the Debtor's purchasing process and plan, managing the Debtors' efforts to obtain Debtor in possession financing, managing the day to day operations of the Debtors' business, communicating with the Debtors' creditors, preparing and reviewing possible plans of reorganization and pursuing strategic alternatives not limited to a Section 363 sale, providing testimony of value to the Court, if necessary, regarding asset value and managing and directing the Debtors' professionals.

8.    BCCA is a wholly owned subsidiary of BDO Seidman, LLP ("BDO"). BCCA generally operates with only a limited number of full time professionals and utilizes the resources of independent contractors and BDO to supplement the staffing requirements of any given job. It is BCCA's intention to supplement its' staff and utilize independent contractors and BDO employees to staff this project. Further, should it be determined that any of the services provided by BCCA are governed by Financial Regulatory Authority ("FINRA") regulations, it is BCCA's intention to utilize licensed personnel from BDO's affiliated investment bank – BDO Capital Advisors, LLC ("BDO Capital"). All fees for such personnel will be within the ranges specified above and commensurate with the experience and expertise of the personnel in question. Such personnel and their status (i.e. independent contractor, BDO employee, BDO Capital employee, and level) shall be clearly identified

on the detail time entries incorporated in any application for compensation submitted by BCCA. All obligations to such personnel will be on an hourly basis plus expenses and shall be the sole responsibility of BCCA.

9.      BCCA shall not be signatories of the Debtors' accounts and shall not have authority to collect, account for, pay, or fail to pay any sales, use, franchise, payroll or similar tax.

10.     The Debtors have determined that the professional standing, competency and reputation of BCCA are high and that Anthony F. Wolf is qualified to provide the services requested by the Debtors.

11.     All of the applicable terms of the attached Agreement are incorporated into the post-petition engagement letter attached as **Exhibit B** (the "Engagement Letter").

### DISCLOSURES OF CONNECTIONS WITH DEBTORS AND PARTIES IN INTEREST

12.     BCCA has advised the Debtors that it is willing to accept such representation, that it neither holds nor represents an interest adverse to the estate, and that it is a disinterested person within the meaning of 11 U.S.C. Section 327(a).

13.     The affidavit of Anthony F. Wolf setting forth BCCA's connections with the Debtors, creditors, any other parties in interest, their respective attorneys and accountants, the United States Trustee, or any person employed by in the office of the United States Trustee is attached hereto as **Exhibit A** in accordance with Rule 2014(a) of the FEDERAL RULES OF BANKRUPTCY PROCEDURE.

14.     Subject to the Court's approval in accordance with 11 U.S.C. § 330(a), the compensation to be paid BCCA will be based upon its normal hourly compensatory rate and for reimbursement of all reasonable out-of-pocket expenses with the payment of such fees and expenses

to be approved in accordance with the Bankruptcy Code, the FEDERAL RULES OF BANKRUPTCY PROCEDURE, the Local Bankruptcy Rules and orders of this Court.

<u>**COMPENSATION AND REIMBURSEMENT**</u>

15.    BCCA will bill the Debtors on a monthly basis and all fees and expenses incurred by BCCA in the above-referenced bankruptcy cases shall be subject to the Court's final approval pursuant to 11 U.S.C. § 330.  BCCA will make monthly or quarterly fee applications in accordance with the interim compensation and final compensation procedures set forth in the Bankruptcy Code and Local Rules.

16.    Compensation for BCCA personnel will be in accordance with BCCA's standard hourly rates listed below:

| Title | Fees |
|---|---|
| Partners / Managing Directors | $500 – 800 per hour |
| Directors / Senior Managers | $350 – 600 per hour |
| Managers | $275 – 395 per hour |
| Seniors | $200 – 350 per hour |
| Staff | $150 - 225 per hour |

17.    However, due to the financial condition of the Debtors, certain personnel will charge a reduced rate as described in the Engagement Letter attached as Exhibit B.

18.    Additionally, should the Debtors utilize BDO Capital  to facilitate any Section 363 sale, BDO Capital will be paid five percent (5%) of the amount offered by the "stalking horse" bidder.

19.    The Debtors will also reimburse BCCA for any reasonable out of pocket expenses incurred in connection with this retention including travel, lodging, telephone charges, etc.

20.    BCCA reserves the right to seek an administrative carve out from the Debtors' secured lenders as part of any debtor-in-possession financing or cash collateral order.  In addition to

hourly fees, BCCA also reserves the right to enter into discussions at a later date regarding success fee compensation for successful performance and value-added as a result of the efforts of BCCA, subject to Court approval.

21.     The Disclosure of Compensation required by Rule 2016(b) of the FEDERAL RULES OF BANKRUPTCY PROCEDURE is attached hereto in Exhibit B.

22.     The Debtors believe that employment of BCCA as Debtors' financial consultants is in the best interest of the Debtors' creditors and bankruptcy estates.

23.     Except as otherwise disclosed, the Debtors have not sought approval to employ any other consultant in the above-referenced bankruptcy cases.

### III.     NOTICE

24.     The Debtors have caused a copy of this Motion to be served upon (i) the proposed Limited Service List, which includes certain prepetition lenders, known counsel and the consolidated list of the top thirty (30) largest unsecured creditors selected from all four Debtors; (ii) the United States Trustee (iii) the Internal Revenue Service, (iv) the United States Attorney; and (v) those persons who have formally appeared in these Cases and requested service pursuant to Bankruptcy Rule 2002; and (vi) all other applicable government agencies to the extent required by the Bankruptcy Rules and the Bankruptcy Local Rules. The Debtors submit that no other or further notice need be provided.

THEREFORE, Debtors respectfully ask the Court to enter an order approving the employment of BDO CONSULTING CORPORATE ADVISORS, LLC as Debtors' financial consultants and chief restructuring officer in the above-referenced bankruptcy case and grant such other and further relief as is just and proper.

Dated: April _5_, 2010

Respectfully submitted,

LANGLEY & BANACK, INCORPORATED
Suite 900, Trinity Plaza II
745 East Mulberry
San Antonio, TX 78212-3166
Telephone: (210)-736-6600
Fax: (210) 735-6889
E-mail: dgragg@langleybanack.com

By: _____

DAVID S. GRAGG
Texas Bar No. 08253300
STEVEN R. BROOK
Texas Bar No. 03042300
ALLEN DeBARD
Texas Bar No. 24065132

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS-IN-POSSESSION

EXHIBIT "A"

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | ' | **CHAPTER 11** |
| | ' | |
| **ALAMO IRON WORKS, INC., et al.** | ' | **CASE NO. 10-** 51269 |
| | ' | |
| **Debtors.** | ' | **(Joint Administration Pending)** |
| | ' | |

## AFFIDAVIT OF ANTHONY F. WOLF IN SUPPORT OF THE DEBTORS' EMERGENCY APPLICATION TO EMPLOY BDO CONSULTING CORPORATE ADVISORS, LLC AS DEBTORS' FINANCIAL CONSULTANTS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF ___Bexar___ | § |

Before me, the undersigned authority, appeared this day ANTHONY F. WOLF who, being by me duly sworn, upon his oath deposed and said:

1.     "My name is Anthony F. Wolf. I am of sound mind, over the age of twenty-one, have never been convicted of any crime, and am fully competent to make this affidavit. I am a principal in the firm of BDO Consulting Corporate Advisors, LLC ("BCCA").

2.     "I am submitting this Affidavit in support of the Debtors' Emergency Application to Employ BCCA as Debtors' Financial Consultants ("Application"), for purposes of making all required disclosures pursuant to Rule 2014 of the FEDERAL RULES OF BANKRUPTCY PROCEDURE and to advise the Court of BDO's qualifications.

3.     "I have personal knowledge of each of the facts stated in this Affidavit, except for those facts stated on information and belief, and as to those facts, I am informed and believe them to be true. If called as a witness, I would testify as to the matters set forth below based upon my personal knowledge, except where otherwise indicated. To the extent that I obtain additional information which requires further disclosure or modification of the Application or this Affidavit, a supplemental affidavit will be submitted to the Court.

4.     "Based on my knowledge of the issues to be addressed in the case, I believe BCCA's representation of the Debtors will involve the issues and require the services described

in the Application. To the best of my knowledge, BCCA and the professionals it employs are qualified to represent the Debtors.

5.     "I do not hold an interest adverse to the interests of the estates and the Debtors, nor do we have any relationship, direct or indirect, with the Debtors or any other party claiming an interest in the Debtors, the attorneys or accountants for the Debtors, creditors or interested parties, the U.S. Trustee, or any person employed by the office of the U.S. Trustee.

6.     "In relation to the Debtors, BCCA and its parent, BDO Seidman, LLP ("BDO"), or its affiliate BDO Capital Advisors, LLC ("BDO Capital"):

    (a)     is not an equity security holder or an insider;

    (b)     is not and was not an investment banker for any outstanding security of the Debtors;

    (c)     has not been, within three years before the date of the filing of the petitions, an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors;

    (d)     is not and was not, within two years before the date of the filing of the petitions, a director, officer, or employee of the Debtors or of an investment banker specified in subparagraph (b) or (c) of this paragraph; and

    (e)     does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker specified in subparagraph (b) or (c) of this paragraph, or for any other reason, with respect to the matter for which BCCA is to be engaged.

7.     "To my knowledge, and subject to the disclosures of creditors and other parties-in-interest made known to me to be the only significant creditors and other significant parties-in-interest in this matter, BCCA and BDO do not have any business relationships with those parties which are or may be creditors of the Debtors, or any other party in interest herein except as specified below, which each represent less than .5% of the Firm's annual revenue:

    (a)     BDO performed and completed limited tax services, risk advisory services, and is currently performing risk valuation services for PNC Bank and/or its affiliate PNC Equipment Finance;

    (b)     BCCA, and the CRO's while at prior firms, have previously served as financial advisor to several companies that were borrowers from PNC at

the time of the respective engagements. In one instance, BCCA was introduced to the borrowing company by PNC;

    (c)    BDO performed and completed limited tax services for Sherwin Williams;"

8.    "From time to time, BCCA and its parent, BDO, have been retained and likely will continue to be retained by certain of the Debtors' creditors but it is the intention of both BCCA and BDO to use commercially reasonable efforts to limit any such engagements to matters unrelated to these chapter 11 cases. BCCA and BDO are undertaking a detailed search to determine, and to disclose, whether they represent or have represented any significant creditors, equity security holders, insiders or other parties-in-interest in any unrelated matters. To the extent that I have been provided with the names of significant creditors and parties-in-interest, BCCA and BDO are performing a review of potential connections and relationships between BCCA, BDO and (i) the Debtors; (ii) Related Entities; (iii) Significant Shareholders; (iv) Prepetition Lenders; (v) Secured Lenders; (vi) the Debtors' 20 largest unsecured creditors as identified in the Debtors' chapter 11 petitions; and (vii) professionals retained by the Debtors and their secured creditor. In connection, therewith, BCCA and BDO are searching their internal database, have sent out e-mails to all of their employees and are investigating all responses to its search. Despite commercially reasonable efforts to identify and disclose BCCA's and BDO's connections with parties in interest in this case, as made known to me in writing, because BDO has a large national practice and serves clients through over 30 offices and because the Debtors are a large enterprise with hundreds of creditors and other relationships, I am unable to state with certainty that every client representation or other connection has been disclosed. In this regard, if either BCCA or BDO discovers additional information that requires disclosure, BCCA will file a supplemental disclosure with the Court as promptly as possible."

9.    As of the morning of April 2, 2010, prior to the Petition Date, the Debtors had paid BCCA at total of $278,456.38 including the retainer and BCCA held a retainer of $89,024.25. As of the Petition Date of April 5th, payments through the Petition Date totaled $278,456.38 including the retainer and it is believed that BCCA will hold a retainer of $69,103. All payments were made in advance of the work.

10.    "In light of the foregoing, I believe BCCA is 'disinterested,' within the meaning of 11 U.S.C. §§ 101(14) and 327, and that the employment of BDO as Debtors' financial consultants is appropriate and should be approved. I reserve the right to supplement this Affidavit."

11.    "The general nature of services that BCCA will perform may include, but are not limited to, the following as requested by the Debtors and agreed to by BCCA:

    (a)    Assist the Debtor's personnel with the Debtors' cash management, cash disbursement and cash flow reporting process, to include consultation on all cash and wire disbursements to be approved by management in accordance with applicable cash collateral or debtor-in-possession

financing orders and any other orders entered by the Court in the Debtors' cases;

(b) Manage the Debtors' purchasing processes and purchasing plan in consultation with management, including approval of planned purchases and sourcing;

(c) Manage the Debtors' efforts to obtain debtor in possession financing or cash collateral, and manage the Debtors' reporting of performance pursuant to applicable debtor-in-possession financing, cash collateral, or other orders entered by the Court;

(d) Work with management to manage the day to day operations of the Debtors' businesses;

(e) Serve as the principal contact with the Debtors' creditors with respect to the Debtors' financial, operational, and reorganization matters. The CRO shall be authorized to directly communicate with parties in interest in the bankruptcy case;

(f) Prepare and review possible reorganization plans and strategic alternatives for maximizing the debt repayment and enterprise value of the Debtors and/or the Debtors' businesses including possible asset sales pursuant to Section 363 of the Bankruptcy Code ("363 Sales");[2]

(g) Perform such other services in connection with the reorganization of the Debtors and the preparation of the Debtors' proposed 363 Sales or Plan of Reorganization ("POR") as may be reasonably necessary to advance the Debtors' reorganization efforts under Chapter 11 and the preparation, confirmation and consummation of a 363 Sale or POR;

(h) Provide such Court testimony as may be required as to the value of the Companies' assets, strategic and reorganization alternatives, operating performance, and in support of 363 Sale and POR motions;

(i) Manage and direct the Debtors' professionals in the 363 Sale and POR process and coordinate their efforts and individual work product consistent with the Debtors' overall reorganization goals; and

(j) Develop the plan of implementation for the Debtors' 363 Sale and POR, and such other related forecasts and management presentations as may be required in connection with negotiations or by the Debtors for other corporate purposes."

---

[2] Any services requiring licensed professionals pursuant to FINRA regulations, BCCA shall utilize such professionals holding such licenses from its affiliate BDO Capital Advisors, LLC ("BDO Capital").

12. "A copy of the Engagement Letter entered into by BCCA and the Debtors prepetition is attached to the Application and incorporated herein."

13. "Any request by BCCA for compensation for professional services rendered for the Debtors shall be based upon the time expended to render such services and at billing rates commensurate with the experience of the person performing such services and will be computed at the hourly billing rates agreed to by the parties, which in some cases is below the rate customarily charged by BCCA for such services. Expenses will be charged at actual costs incurred (and will include charges for copying, travel, telephone, computer rental, etc.)."

14. "The hourly billing rates as of the date of this Affidavit are as follows for the professionals of BCCA, but subject to change in the ordinary course of its business: BCCA's standard rates normally charged are:"[3]

| Title | Fees |
|---|---|
| Partners / Managing Directors | $500 – 800 per hour |
| Directors / Senior Managers/Principals | $350 – 600 per hour |
| Managers/ Vice Presidents | $225 – 500 per hour |
| Seniors/ Associates | $200 – 350 per hour |
| Staff | $125 - 225 per hour |

15. "Due to the circumstances of this engagement, BCCA will be paid by the Debtors for the services of certain personnel at reduced rates as specified in the Engagement Letter."

16. "Should BDO Capital be utilized to facilitate any 363 Sales or POR, then BDO Capital shall be paid five percent (5%) of the amount paid in excess of the amount offered by the "stalking horse" bidder."

17. "In connection with the submission of periodic billings, detailed descriptions for each professional of the services performed by them, and the time expended on the engagement by each professional for all relevant engagement activity categories, will be provided. In addition, reasonable out-of-pocket expenses, including travel, report production, delivery services, and other costs incurred in providing the services are included, at actual cost, in the total amount billed. In the normal course of business, BCCA revises its regular hourly rates to reflect changes in responsibilities, increased experience, and increased costs of doing business. Accordingly, BCCA requests that the aforementioned rates of BCCA be revised to the regular hourly rates, which will be in effect from time to time. Changes in regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective."

18. "BCCA intends to apply to the court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the

---

[3] The rates in this chart include those normally charged by BDO and BDO Capital.

applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules of the Western District of Texas and any orders entered by the Court. BCCA has agreed to accept as compensation such sums as may be allowed by the Court based upon the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in this case. BCCA understands that interim and final fee awards are subject to approval by the Court."

19.    "BCCA is a wholly owned subsidiary of BDO. BCCA generally operates with only a limited number of full time professionals and utilizes the resources of independent contractors and BDO to supplement the staffing requirements of any given job. It is BCCA's intention to supplement its' staff and utilize independent contractors and BDO employees to staff this project. Further, should it be determined that any of the services provided by BCCA are governed by Financial Regulatory Authority ("FINRA") regulations, it is BCCA's intention to utilize licensed personnel from BDO's affiliated investment bank – BDO Capital Advisors, LLC ("BDO Capital"). All fees for such personnel will be within the ranges specified above and commensurate with the experience and expertise of the personnel in question. Such personnel and their status (i.e. independent contractor, BDO employee, BDO Capital employee, and level) shall be clearly identified on the detail time entries incorporated in any application for compensation submitted by BCCA. All obligations to such personnel will be on an hourly basis plus expenses and shall be the sole responsibility of BCCA."

20.    In accordance with section 504 of the Bankruptcy Code, no agreement or understanding exists between me or BCCA, on the one hand, and any other person, on the other hand, for the sharing of compensation as BCCA may receive in connection with services rendered in this case, nor will any division of fees prohibited by section 504 of the Bankruptcy Code be made by me, or any employee of BCCA. This is, however, subject to the normal inter-company settlement procedures between BCCA on the one hand, and its parent, BDO or its affiliate BDO Capital on the other.

21.     As set forth above, BCCA respectfully requests that it be retained effective as of the Petition Date, and all services rendered by BCCA to the Debtor from that date forward be deemed authorized pursuant to this Court's Order.

Further, affiant said nothing.

_____

ANTHONY F. WOLF
Managing Director of BDO CONSULTING
CORPORATE ADVISORS, LLC


        SWORN TO AND SUBSCRIBED before me, the undersigned authority, this _5_ day of April, 2010.


_____
Notary Public, State of Texas

HENRIETTA LE SAGE
Notary Public, State of Texas
My Commission Expires
March 14, 2014

EXHIBIT "B"



700 North Pearl, Suite 2000
Dallas, Texas 75201
Telephone: 214-969-7007
Fax: 214-953-0722

**BDO Consulting**
Corporate Advisors, LLC

March 31, 2010

Mr. Anthony H. Koch
Chairman & CEO
Alamo Iron Works, Inc.
943 AT&T Center Parkway
San Antonio, TX 78219

Dear Mr. Koch:

This letter confirms and sets forth the terms and conditions of the engagement between BDO Consulting Corporate Advisors, LLC ("BCCA") and Alamo Iron Works, Inc. and its affiliates Alamo Advertising, Inc., Alamark Technologies, L.P., and Southwest Wholesale Supply Co., Inc. ("you" or the "Companies", or "Alamo", or the "Debtors"), including the scope of the services to be performed and the basis of compensation for those services.

1.     <u>Retention</u>

        a.     BCCA is presently serving as Financial Advisor to Alamo Iron Works, Inc. pursuant to the terms of that Engagement Letter executed February 12, 2010.

        b.     It is understood that the Companies will shortly file a petition for relief pursuant to Title 11 of the United States Code (the "Bankruptcy Code") as a Chapter 11 debtor-in-possession in the U.S. Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Court") and that this proposed agreement (the "Agreement") is subject to approval of the Court;

        c.     It is further understood that the provisions of this Agreement shall become effective on the first date the filing by any of the Companies for relief under the Bankruptcy Code (the "Petition Date").

        d.     The Companies shall seek the Court's approval to ratify the Agreement and retain the Chief Restructuring Officer (as defined herein) and the other personnel set forth in Section 2 of this Agreement as a professional person in accordance with Section 327(a) of the Bankruptcy Code;

        e.     Upon entry of an order approving the retention of BCCA (the "CRO Order") and the retention of the Chief Restructuring Officer, the Chief Restructuring Officer

**IBDO.** **BDO Seidman, LLP**
Accountants and Consultants

shall immediately be vested with the powers set forth herein and shall be
authorized to commence the performance of his or her duties.

2.     Description of Services:

The services to be performed by BCCA set forth in 2 (a) (i) and 2 (a) (ii) shall be in
accordance with section 2(b) below.

a.     Officers and other Personnel. In connection with this engagement, BCCA shall
make available to the Companies:

      (i)     Tony Wolf to serve as Chief Restructuring Officer (the "CRO")
and Bob Starzyk and Greg Baracato to serve as Deputy CROs.
Any reference to the CRO shall also include the Deputy CROs.

      (ii)    Upon the mutual agreement of BCCA and the Board of Directors
of the Companies, or any authorized committee thereof, (the
"Board"), such additional personnel as are necessary to assist in
the performance of the duties set forth in clause 1.b below
("Additional Personnel"). BCCA may utilize additional consulting
and accounting partners and staff from BDO Seidman, LLP
("BDO") in carrying out its services as necessary. However, all
obligations of BCCA shall solely be obligations of BCCA and not
BDO. Further, should it be determined that the duties set forth
herein are governed by Financial Regulatory Authority ("FINRA")
regulations, BCCA shall utilize licensed personnel from BDO's
affiliated investment bank – BDO Capital Advisors, LLC ("BDO
Capital").

b.     Duties. Subject to Section 2(c) and 2(e), herein, the CRO shall have, and shall be
delegated by the Debtors and their boards of Directors, all of the powers and
duties set forth in below. The CRO shall perform such hours of service hereunder
as the CRO deems necessary in his sole discretion.

The CRO shall be employed by the boards of Directors of the Debtor Companies
and authorized by order of the Court pursuant to Board Resolutions of the Debtors
to perform the delegated duties described below on behalf of the Debtors:

      i.     Assist the Debtor's personnel with the Debtors' cash management, cash
disbursement and cash flow reporting process, to include consultation on all
cash and wire disbursements to be approved by management in accordance

**|BDO**  BDO Seldman, LLP
Accountants and Consultants

Attention:
Anthony H. Koch
Alamo Iron Works, Inc. & Affiliates
March 31, 2010

with applicable cash collateral or debtor-in-possession financing orders and any other orders entered by the Court in the Debtors' cases;[1]

ii.  Manage the Debtors' purchasing processes and purchasing plan in consultation with management, including approval of planned purchases and sourcing;

iii.  Manage the Debtors' efforts to obtain debtor in possession financing or cash collateral, and manage the Debtors' reporting of performance pursuant to applicable debtor-in-possession financing, cash collateral, or other orders entered by the Court;

iv.  Work with management to manage the day to day operations of the Debtors' businesses;

v.  Serve as the principal contact with the Debtors' creditors with respect to the Debtors' financial, operational, and reorganization matters. The CRO shall be authorized to directly communicate with parties in interest in the bankruptcy case;

vi.  Prepare and review possible reorganization plans and strategic alternatives for maximizing the debt repayment and enterprise value of the Debtors and/or the Debtors' businesses including possible asset sales pursuant to Section 363 of the Bankruptcy Code ("363 Sales");[2]

vii.  Perform such other services in connection with the reorganization of the Debtors and the preparation of the Debtors' proposed 363 Sales or Plan of Reorganization ("POR") as may be reasonably necessary to advance the Debtors' reorganization efforts under Chapter 11 and the preparation, confirmation and consummation of a 363 Sale or POR;

viii.  Provide such Court testimony as may be required as to the value of the Companies' assets, strategic and reorganization alternatives, operating performance, and in support of 363 Sale and POR motions;

---

[1] The CRO, the Additional Personnel, and BCCA shall not be signatories on the Companies' accounts and shall not have authority to collect, account for, pay, or fail to pay any sales, use, franchise, payroll of similar tax.

[2] As noted hereinabove, should any of the services relating to the 363 Sales or any POR requiring licensed professionals pursuant to FINRA regulations, BCCA (and the CRO) shall utilize such professionals holding such licenses from its affiliate BDO Capital.

    ix.    Manage and direct the Debtors' professionals in the 363 Sale and POR process and coordinate their efforts and individual work product consistent with the Debtors' overall reorganization goals; and

    x.    Develop the plan of implementation for the Debtors' 363 Sale and POR, and such other related forecasts and management presentations as may be required in connection with negotiations or by the Debtors for other corporate purposes.

c.    <u>Reporting</u>. The CRO shall at all times be acting under the direction and oversight of the Board. All other BCCA personnel shall report to the CRO. The CRO shall have at all times a free and open access to all personnel and shall attend any and all meetings of the Board or any committees thereof. Furthermore, the CRO shall have free and open access and communication to the Companies' bank and other lenders, lessors and parties at interest.

d.    <u>Employment by BCCA</u>. The CRO and the Additional Personnel will continue to be employed by BCCA and while rendering services to the Companies and will continue to work with other personnel at BCCA in connection with other unrelated matters, which will not unduly interfere with services pursuant to this Agreement. With respect to the Companies, however, the CRO shall operate under the direction of the Board, and BCCA shall have no liability to the Companies or any of their shareholders for any acts or omissions of such officers, except for acts constituting bad faith, self dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

e.    <u>Projections; Reliance; Limitation of Duties</u>. You understand that the services to be rendered by BCCA may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Companies' operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, the CRO and the Additional Personnel will be relying on information provided by other members of the Companies' management in the preparation of those projections and other forward-looking statements. None of the CRO, the Additional Personnel or BCCA make any representation or guarantee that an appropriate Plan of Reorganization, restructuring proposal or strategic alternative can be formulated for the Companies, that any POR(s), restructuring proposal or strategic alternative presented to the Board will be more successful than all other possible POR, restructuring proposals or strategic alternatives, that any proposed Plan of Reorganization, restructuring plan or strategic alternative will be accepted

by any of the Companies' creditors, shareholders or other constituents. Further, none of the CRO, the Additional Personnel or BCCA assume any responsibility for the selection of any POR, restructuring proposal or strategic alternative that the CRO, the Additional Personnel or BCCA assists in formulating and presenting to the Board, and the CRO shall be responsible for implementation only of the proposal or alternative approved by the Board and only to the extent and in the manner authorized and directed by the Board.

f.     **Additional Responsibilities.** Upon the mutual agreement of the Companies and BCCA, BCCA may provide such Additional Personnel as the Companies may request to assist in performing the services described above and such other services as may be agreed to, on such terms and conditions and for such compensation as the Companies and BCCA shall agree.

3.    **Compensation.**

a.    BCCA's standard rates normally charged are:[3]

| Title | Fees |
|---|---|
| Partners / Managing Directors | $500 – 800 per hour |
| Directors / Senior Managers/Principals | $350 – 600 per hour |
| Managers/ Vice Presidents | $225 – 500 per hour |
| Seniors/ Associates | $200 – 350 per hour |
| Staff | $125 - 225 per hour |

Due to the circumstances of this engagement, BCCA will be paid by the Companies for the services of the CRO and Additional Personnel as follows:

| Title | BCCA Professional | Fees |
|---|---|---|
| Managing Director | Robert Starzyk | $450 per hour |
| Managing Director | Anthony Wolf | $475 per hour |
| Managing Director | P. Gregory Baracato | $395 per hour |
| Directors | | $325 per hour |

b.    Should BDO Capital be utilized to facilitate any 363 Sales or POR, then BDO Capital shall be paid five percent (5%) of the amount paid in excess of the amount offered by the "stalking horse" bidder.

c.    In addition, BCCA will be reimbursed by the Companies for the reasonable out-of-pocket expenses of the CRO, and the Additional Personnel, incurred in

---

[3] The rates in this chart include those normally charged by BDO and BDO Capital.


**BDO Seidman, LLP**
Accountants and Consultants

Attention:
Anthony H. Koch
Alamo Iron Works, Inc. & Affiliates
March 31, 2010

connection with this assignment, including but not limited to such as travel, lodging, duplications, computer research, messenger and telephone charges. Further, BCCA shall be reimbursed by the Companies for the reasonable fees and expenses of its counsel incurred in connection with the preparation, negotiation, enforcement and approval of this Agreement.

d.    All fees and expenses due to BCCA will be billed on a monthly basis. Compensation of the CRO and BCCA shall be subject to the requirements and procedures of 11 U.S.C. § 330 for compensation of professional persons, subject to the provisions for interim compensation provided by the Court's order applicable to other professional persons retained in this case. BCCA will file monthly or quarterly fee applications in accordance with the interim compensation and final compensation procedures set forth by the Court.

e.    Please make Court approved payments to BCCA to the following account:

|  |  |
|---|---|
| Bank: | Comerica Bank |
| Location: | Detroit, Michigan |
| ABA: | #072000096 |
| SWIFT Code: | MNBDUS33 |
| Account: | #1852343944 |

f.    The CRO and BCCA reserve the right to seek an administrative expense carve out from the Companies' secured lenders as part of any debtor-in-possession financing or cash collateral order.

g.    In addition to hourly fees (subject to limitations, terms and conditions described above), BCCA and the Companies will enter into discussions at a later date regarding success fee compensation for successful performance and value-added as a result of the efforts of the CRO, Additional Personnel, and BCCA.

4.    Term.

The engagement will commence as of the Petition Date subject to approval by the Court.

The CRO's and BCCA's term of employment shall expire upon the earlier of (i) the effective date of a confirmed POR or (ii) entry of an order by the Bankruptcy Court terminating the employment of, or replacing, the CRO, after notice and a hearing.

At the conclusion of the CRO's and BCCA's term of employment, the CRO and BCCA shall file interim and final fee applications for any and all fees and expenses outstanding

**BDO**

BDO Seldman, LLP
Accountants and Consultants

Attention:
Anthony H. Koch
Alamo Iron Works, Inc. & Affiliates
March 31, 2010

(including fees and expenses that accrued prior to but were invoiced subsequent to such termination).

5.    No Audit, Duty to Update.

It is understood that the CRO, the Additional Personnel and BCCA are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the American Institute of Certified Public Accountants, Securities and Exchange Commission or other state or national professional or regulatory body. They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Companies. Neither the CRO, the Additional Personnel nor BCCA are under any obligation to update data submitted to them or review any other areas unless specifically requested by the Board to do so.

6.    Tax Liabilities.

Neither the CRO, the Additional Personnel, nor BCCA shall be responsible for any duty to collect, account for, pay, or fail to pay any sales, use, franchise, payroll or similar tax. Thus, neither the CRO, the Additional Personnel, nor BCCA shall have any duty which would render them a "Responsible Individual" as defined by Section 111.016 of the Texas Tax Code, would incur liability under Section 7501 of Title 26 of the United States Code, or would incur liability under any other similar provisions of any other state code or the United States Code.

7.    No Third Party Beneficiary.

The Companies acknowledges that all advice (written or oral) given by BCCA to the Companies in connection with this engagement is intended solely for the benefit and use of the Companies (limited to its Board and its management) in considering the matters to which this engagement relates. The Companies agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without BCCA's prior approval (which shall not be unreasonably withheld), except as required by law.

8.    Sole Service Provider.

The Companies and BCCA agree that any obligation under this Agreement relating to the provision of services to the Companies by BCCA are solely the obligations of BCCA and

**|BDO**  BDO Seidman, LLP
Accountants and Consultants

Attention:
Anthony H. Koch
Alamo Iron Works, Inc. & Affiliates
March 31, 2010

not, without limitation, those of its, subsidiaries, affiliates, parents or other related entities.

9.  **Conflicts.**

BCCA is not currently aware of any relationship that would create a conflict of interest with the Companies, BCCA's parents, subsidiaries, or other affiliates or those parties-in-interest of which you have made us aware. Because BCCA is a consulting firm that serves clients on an international basis in numerous cases, both in and out of court, it is possible that BCCA, or its parents, subsidiaries, or other affiliates may have rendered services to, both in and out of court, or have business associations with other entities or people which had or have or may have relationships with the Companies, including creditors of the Companies.

10.  **Confidentiality / Non-Solicitation.**

The CRO, the Additional Personnel and BCCA shall keep as confidential all non-public information received from the Companies in conjunction with this engagement, except (i) as requested directly by the Companies or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. Except as specifically provided for in this letter, the Companies on behalf of itself and its affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of BCCA who worked on this engagement while employed by BCCA ("Solicited Person"); provided that this restriction shall not apply with respect to any general solicitation for new employees which is not targeted at the Solicited Person. Should the Companies or any of its affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, BCCA shall be entitled to a fee from the party extending such offer equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 500 hours, provided that such fee shall be in addition to all other remedies at law or in equity. The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

11.  **Indemnification.**

The Companies shall indemnify the CRO, the Additional Personnel and BCCA to the same extent as the most favorable indemnification they extend to its officers, directors



**BDO Seidman, LLP**
Accountants and Consultants

Attention:
Anthony H. Koch
Alamo Iron Works, Inc. & Affiliates
March 31, 2010

and members of the Board, whether under the Companies' bylaws, certificate of incorporation, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the CRO, the Additional Personnel or BCCA. The provisions of this Section 10 are in the nature of contractual obligations, and no change in applicable law or the Companies' charters, bylaws or other organizational documents or policies shall affect the CRO's, the Additional Personnel's or BCCA's rights hereunder.

12.    Limitations of Liability.

    (a)    The Companies agree that any dispute, controversy or claim arising in connection with BCCA's performance or breach of this Agreement must be brought by the Companies during the pendency of the Companies' bankruptcy cases.

    (b)    In no event, regardless of the legal theory advanced, shall BCCA be liable or responsible to any person or entity, including the Companies, other than for its gross negligence or willful misconduct, as determined by the final judgment of a court of competent jurisdiction with respect thereto. Neither party shall be liable to the other for consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or goodwill), regardless of the legal theory advanced or of any notice given as to the likelihood of such damages; provided that this provision shall not limit BCCA's indemnity rights as provided for in this Agreement or applicable law. The Companies' recourse with respect to any liability or obligation of BCCA hereunder shall be limited to a maximum recovery of the aggregate amount of the fees received by BCCA pursuant to this agreement for the twelve (12) months prior to the occurrence of the dispute, controversy, or claim.

    (c)    It is acknowledged and agreed that any and all acts and omissions, obligations and liabilities of BCCA under this Agreement are solely its own and are not those of any other person, and no past, present or future Director, officer, employee, incorporator, member, partner, affiliate, agent, attorney or representative of BCCA shall have any liability for any obligations or liabilities of BCCA under this Agreement or for any claim based on, in respect of, or by reason of the engagement hereunder.

13.    Dispute Resolution Procedure.

Any dispute, controversy or claim arising in connection with the performance or breach of this Agreement is within the sole jurisdiction of the Court beginning on the Petition Date. However, to the extent the Court finds that alternative dispute resolution



**BDO Seidman, LLP**
Accountants and Consultants

<u>Attention:</u>
Anthony H. Koch
Alamo Iron Works, Inc. & Affiliates
March 31, 2010

procedures are appropriate, the Companies and BCCA agree to the following procedures which are binding from the date of full execution of this Agreement until the Petition Date.

Either party may, upon written notice to the other party, request facilitated negotiations. Should the Court agree that such negotiations are appropriate, such negotiations shall be assisted by a neutral facilitator acceptable to both parties and shall require the best efforts of the parties to discuss with each other in good faith their respective positions and, respecting their different interests, to finally resolve such dispute.

Each party may disclose any facts to the other party or to the facilitator, which it, in good faith, considers necessary to resolve the dispute. However, all such disclosures will be deemed in furtherance of settlement efforts and will not be admissible in any subsequent litigation against the disclosing party. Except as agreed by both parties, the facilitator shall keep confidential all information disclosed during negotiations. The facilitator shall not act as a witness for either party in any subsequent arbitration between the parties.

Such facilitated negotiations shall conclude within sixty days from receipt of the written notice unless extended by mutual consent. The parties may also agree at any time to terminate or waive facilitated negotiations. The costs incurred by each party in such negotiations will be borne by it; the fees and expenses of the facilitator, if any, shall be borne equally by the parties.

If any dispute, controversy or claim arises in connection with the performance or breach of this Agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by the Court. However, to the extent the Court deems it appropriate, the parties agree to binding arbitration. The arbitration proceeding shall take place in the city in which the BCCA office providing the relevant services exists, unless the Court directs to a different locale or the parties agree to a different locale. The proceeding shall be governed by the provisions of the Federal Arbitration Act ("FAA") or, if a court of competent jurisdiction determines the FAA inapplicable, by the laws of the state in which the proceeding is to take place. In any arbitration instituted hereunder, the proceedings shall proceed in accordance with the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association, except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel.

Such arbitration shall be conducted before a panel of three persons, one chosen by each party and the third selected by the two party-selected arbitrators. The arbitration panel shall have no authority to award non-monetary or equitable relief, and any monetary



**BDO Seldman, LLP**
Accountants and Consultants

Attention:
Anthony H. Koch
Alamo Iron Works, Inc. & Affiliates
March 31, 2010

award shall not include punitive damages. The confidentiality provisions applicable to facilitated negotiation shall also apply to arbitration.

The award issued by the arbitration panel may be confirmed in a judgment by the Court, or in the event none of the Companies file Chapter 11 petitions, any court of competent jurisdiction. All reasonable costs of both parties, as determined by the arbitrators, including but not limited to (1) the costs, including reasonable attorneys' fees, of the arbitration; (2) the fees and expenses of the AAA and the arbitrators and (3) the costs, including reasonable attorneys' fees, necessary to confirm the award in court shall be borne entirely by the non-prevailing party (to be designated by the arbitration panel in the award) and may not be allocated between the parties by the arbitration panel.

The dispute resolution procedures set forth in this Section 11 shall apply to the fullest extent permitted by law.

14.   Succession and Assignment.

BCCA may freely assign, delegate or transfer, in whole or in part this Agreement and the respective rights and obligations under this Agreement to any of its affiliates or successors in interest, provided that approval of the Court shall be sought if necessary. The Companies may not assign its rights and obligations under this agreement without the prior written consent of BCCA. In the event of a sale of the Companies' assets or stock, or any substantial portion thereof, the Companies may not, without the prior written consent of BCCA enter into any agreement which revises, amends, modifies, alters or terminates this Agreement. This Agreement shall be binding upon and inure to the benefit of the Parties and their successors and permitted transferees.

15.   Severability.

In the event that any court of competent jurisdiction shall determine that any provision of this Agreement is invalid, such determination shall not affect the validity of any other provision of this Agreement, which shall remain in full force and effect and shall be construed so as to be valid under applicable law.

16.   Miscellaneous.

This Agreement incorporates the entire understanding of the parties with respect to the subject matter thereof and may not be amended or modified except in writing executed by each of the signatories hereto.

**BDO**

Attention:
Anthony H. Koch
Alamo Iron Works, Inc. & Affiliates
March 31, 2010

17.     Counterparts.

This agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which together shall constitute one and the same instrument.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

**BDO Consulting Corporate Advisors, LLC**

By: _____
        Name: Anthony F. Wolf
        Title: Managing Director
        Date: 4-01-2010

Accepted and Agreed:

**Alamo Iron Works, Inc.**

By: _____
        Name:  Anthony H. Koch
        Title:   Chairman & CEO
        Date:

<u>Attention:</u>
Anthony H. Koch
Alamo Iron Works, Inc. & Affiliates
March 31, 2010


Accepted and Agreed:

**Southwest Wholesale Supply, Inc**

By: _____

    Name:  Anthony H. Koch
    Title:   Chairman & CEO
    Date:




Accepted and Agreed:

**Alamo Advertising, Inc.**

By: _____

    Name:  Anthony H. Koch
    Title:   Chairman & CEO
    Date:




Accepted and Agreed:

**Alamark Technologies, L.P.**

By: _____

    Name:  Anthony H. Koch
    Title:
    Date: