| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| | § | |
| **ALAMO IRON WORKS, INC.,** *et al.*[1] | § | **Case No. 10-51269** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |
| | § | |

**MOTION FOR ENTRY OF ORDER** (A) AUTHORIZING AND SCHEDULING A PUBLIC AUCTION FOR THE SALE OF CERTAIN OR ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (B) APPROVING THE STALKING HORSE BID AS A CONFORMING QUALIFIED BID, (C) APPROVING PROCEDURES FOR THE SUBMISSION OF QUALIFYING BIDS, (D) APPROVING BID PROTECTIONS, AND (E) APPROVING THE FORM AND MANNER OF NOTICE PURSUANT TO FED. R. BANKR. P. 2002

TO THE HONORABLE RONALD B. KING, UNITED STATES BANKRUPTCY JUDGE:

Alamo Iron Works, Inc. ("AIW"), Southwest Wholesale Supply Co., Inc., Alamo Advertising, Inc. and Alamark Technologies, L.P. (collectively, the "Debtors"), the Debtors in the above captioned cases (the "Cases"), hereby file this *Motion for Entry of Order (A) Authorizing and Scheduling Public Auction for the Sale of Certain or All of the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances, (B) Approving the Stalking Horse Bid as a Conforming Qualified Bid, (C) Approving Procedures for the Submission of Qualifying Bids, (D) Approving Bid Protections, and (E) Approving the Form and the Manner of Notice Pursuant to Fed. R. Bankr. P. 2002* (the "Sale Motion"). In support of the Motion, the Debtors respectfully represents as follows:

The Debtors as hereby move the Court in accordance with this Sale Motion for the entry of an order under sections 105(a), 363, 365 and 1146(c) of title 11 of the United States Code (as

---

[1] Debtors are the following entities: Alamo Iron Works, Inc., Southwest Supply Co., Inc. Alamo Advertising, Inc. and AlaMark Technologies, L.P.

amended, the "Bankruptcy Code") (A) to authorize and schedule a public auction for the sale of certain or all of the Debtors' assets free and clear of all liens, claims, and encumbrances, (B) to approve the Stalking Horse Bid as a Conforming Qualified Bid, (C) to approve Bid Procedures for the submission of Qualifying Bids, (D) to approve Bid Protections, and (E) to approve the form and the manner of notice pursuant to Fed. R. Bankr. P. 2002 in connection with such Sale(s) [capitalized terms are defined below in this Sale Motion]. In support of the Sale Motion, the Debtors respectfully state as follows:

### Jurisdiction

1. This Court has jurisdiction over this Sale Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Sale Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105, 363, 365 and 1146(c) of the Bankruptcy Code and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background Introduction

3. On April 5, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and a motion to procedurally consolidate their chapter 11 cases for administrative purposes only (the "Chapter 11 Cases"). The Debtors are continuing to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no official committee of creditors has been established in these Chapter 11 Cases.

4. The Debtors, tracing their origins in business to 1875, are diverse companies that serve related industries and market segments and sells numerous products and services including industrial supplies and steel. Alamo Iron Works, Inc.'s corporate charter was originally filed in 1898. Since 2008, the Debtors have refocused their business and sales force in response to the national and Texas economy. The Debtors experienced a precipitous downturn in their sales in late 2009 or early 2010. Over the last three (3) months, Debtors have been forced to reduce the number of employees by approximately forty (40), leaving a remaining force of approximately two hundred twenty-four (224) employees. Debtors are unable to service their primary financing with PNC Bank, N.A. ("PNC") and absent this filing and the debtor in possession financing, Debtors would have shortly exhausted any remaining availability in the pre-petition PNC financing. The Debtors have carefully evaluated liquidation and have determined that a sale under the Stalking Horse Bid conducted expeditiously in substantial accordance with the proposed Bid Procedures would generate a greater return than liquidation under a liquidating Chapter 11 or under Chapter 7. The liquidating Chapter 11 is counter-indicated due to the costs of continuation of the business and administrative costs and the likely absence of significant operating financing. The next best alternative to this sale is a Chapter 7, in the Debtors' opinion.

### Debtors' Prepetition Efforts to Solicit Potential Buyers for the Debtors' Assets

5. The president of the Debtors, or his family, have owed the Debtors for approximately 20 years. The Debtors through senior management have exposed the business to the market since the fall of 2009 or early 2010 (when they determined that the Debtors could no longer survive in this market). That exposure lead to negotiations with Industrial Distribution Group, Inc. ("IDG") a diversified management, financial and holding company. Debtors with the consent of their principal lender, PNC retained BDO Consulting Corporate Advisors, LLC as financial

consultants ("BDO") to the Debtors pre-petition and are contemporaneously filing a motion to retain BDO post-petition, and Tony Wolf of BDO as Chief Restructuring Officer. The Debtors and BDO have been in intense negotiations with IDG over the last several weeks, with the knowledge and support of PNC. PNC has agreed to extend debtor in possession financing of the Debtors, subject to use to IDG's Stalking Horse Bid in the context of this Sale Motion, and subject to other contemporaneous "first day" motions in this case.

6.     The Debtors propose to advertise this sale upon approval of this Sale Motion in industry publications and publications of general circulation (dependent on pricing), sufficiently prior to the proposed sale date ("Auction Date").     The inability of the Debtors to continue operations substantially beyond the proposed Auction Date is one of the two significant factors driving the timing of this case and the proposed auction schedule. The other significant factor is that under the liquidation analysis conducted by the Debtors and BDO a Chapter 7 filing is only the lesser option if the Debtors' business can be sold quickly and on favorable terms as suggested by this Motion; put another way, absent a rapid and orderly sale, Chapter 7 liquidation is the better alternative in the opinion of Debtors and BDO.

### *Alamo Distribution, LLC Asset Purchase Agreement*

7.     On April 8, 2010, the Debtors executed an asset purchase agreement with Alamo Distribution, LLC, a Delaware limited liability company ("Alamo" or "Purchaser") [an affiliate of IDG] specifying the terms and conditions of a possible transaction with respect to certain assets and properties of the Debtors (collectively, the "Alamo Assets"), subject to approval for ratification by this Court. The Debtors, in consultation with BDO, evaluated the terms and benefits of Alamo's proposal, as well as the benefits of other alternatives. The Debtors, in their best business judgment, concluded that Alamo's proposal offered the most advantageous terms

and greatest economic benefit to the Debtors and commenced negotiations with Alamo/IDG on the terms of an asset purchase agreement.

8. As a result of extensive, arms-length negotiations, the Debtors and Alamo executed an asset purchase agreement (the "Alamo Asset Purchase Agreement"), a copy of which is attached hereto as Exhibit A. A letter agreement between Alamo Industrial Group, Inc. and Alamo Distribution, LLC is attached as **Exhibit D** for notice. Pursuant to the Alamo Asset Purchase Agreement, the Alamo Assets are to be sold and transferred to Alamo pursuant to section 363 of the Bankruptcy Code, free and clear of all liens, claims and encumbrances, subject to approval of this Court and recognizing the Auction process. The bid represented by the Alamo Asset Purchase Agreement will be the stalking horse bid ("Stalking Horse Bid").

9. The following briefly summarizes certain provisions of the Alamo Asset Purchase Agreement and is qualified entirely by reference to the Alamo Asset Purchase Agreement attached hereto as Exhibit A:[1]

| | |
|---|---|
| **Purchase of the Alamo Assets** | The Alamo Assets being purchased include, without limitation, the Debtors' right, title and interest in and to all material assets and properties of Debtors other than accounts receivable and cash on hand, and certain other Excluded Assets. |
| **Excluded Assets** | The Excluded Assets include all of the Debtors' assets and properties that are being retained by the Debtors and are not being sold or transferred to Alamo, including, among other things, accounts receivable, cash, certain claims and causes of action, insurance policies, and certain corporate documents. |

---

[1] Capitalized terms used in the summary of the Alamo Asset Purchase Agreement that are not defined herein shall have the meaning given in the Alamo Asset Purchase Agreement attached hereto as Exhibit A.

| | |
|---|---|
| **Assumption of Certain Liabilities (collectively, the "Assumed Liabilities)** | The Assumed Liabilities include, without limitation, all of the liabilities and obligations (i) under the assumed contracts in respect of periods after the closing; (ii) relating to and arising from the operation of the acquired business and purchased assets after the closing; (iii) under certain accounts and trade payables and (iv) under certain capital leases. |
| **Retained Liabilities** | The Retained Liabilities include all of the liabilities, obligations and indebtedness of the Debtors other than the Assumed Liabilities, including, but not limited to, liabilities with respect to employee plans and benefit arrangements. |
| **Purchase Price (the "Purchase Price")** | Subject to certain adjustments, the aggregate purchase price for the Alamo Assets is equal to U.S. $8,000,000.00. |
| **Representations and Warranties** | The representations and warranties are customary representations and warranties for a transaction of this type, including, without limitation, representations and warranties regarding: the authority to enter into the sale transaction, the agreement to abide by all laws with respect to the sale, the capability of satisfying the conditions contained in section 365 of the Bankruptcy Code with respect to assumed contracts, and a general disclaimer regarding representations and warranties not specifically enumerated. |
| **Covenants** | The covenants are customary covenants for a transaction of this type, including, without limitation, covenants regarding: the best efforts of the parties, notices and consents, and access to information. |
| **Events of Default** | The events of default are customary events of default for a transaction of this type. |

| Break-up Fee/Expense Reimbursement | Under certain circumstances, if the Alamo Asset Purchase Agreement is terminated without a sale to Alamo, the Debtors will pay Alamo a breakage fee of $240,000.00 and an expense reimbursement of $60,000.00. This fee and reimbursement will be paid, without limitation, in the specific case that another bidder prevails at the Auction. |
|---|---|

## The Sale Procedures

10. The Debtors seek to establish procedures for the sale(s) of the Alamo Assets ("Sales") by filing this Sale Motion. The proposed sales and bidding procedures ("Bidding Procedures") are attached as **Exhibit B**. The Debtors seek an order of this Court approving the Bidding Procedures and the Alamo Asset Purchase Agreement as the Stalking Horse Bid and deeming the Stalking Horse Bid a Conforming Qualified Bid ("**Bidding Procedures Order**") in the form submitted with this Sales Motion. The proposed form of Bidding Procedures Order is attached hereto as **Exhibit C**.

11. Pursuant to the Bidding Procedures, parties interested in bidding on the Alamo Assets, must submit a Qualifying Bid (as defined in the Bidding Procedures) in accordance with the Bidding Procedures. Prior to the Auction, the Debtors shall evaluate each Conforming Qualifying Bid (as defined in the Bidding Procedures) they have received, as well as the Stalking Horse Bid , and shall select the bid(s) that the Debtors determine to be the highest and best offer(s). The Stalking Horse Bid is deemed to be a Conforming Qualifying Bid and PNC may credit bid as provided in the Bidding Procedures . The Bid Procedures also provide a reserve from the proceeds of sale in favor of the second lienholders on the Gonzales Street property; the second lienholders include an officer of AIW and his brother (the reserve will not be disbursed to the second lienholders, if at all, until PNC is paid in full all pre- and post- petition obligations of the Debtors to PNC) .

12. In accordance with the Bidding Procedures, bidders who have made a Conforming Qualifying Bid, as well as Alamo, will be invited to the Auction to compete to make the highest and best offer(s) for the Alamo Assets. The bid(s) that the Debtors select as the highest and best offer(s) that constitutes a Superior Proposal (as defined in the Bidding Procedures) for the Alamo Assets will serve as the opening bid(s) at the Auction. The Auction will commence and attendees will be invited to offer a bid that is higher and better than the opening bid(s).

13. The Bidding Procedures, attached as **Exhibit B** to this Motion, ask the Court to:

(A) approve certain bidding protections set forth in the Bidding Procedures, including (i) a Break-up Fee in the amount of $240,000.00 (or and equivalent Topping Fee), and (ii) reimbursement from seller of up to $60,000.00 of expenses uncured by Purchaser ("Expense Reimbursement");

(B) approve the Bidding Procedures to be employed in connection with the sale of Debtors' assets as contemplated herein, including establishing an auction date, related deadlines and the terms and conditions for the submission of competing offers from the Debtors' assets;

(C) approve the proposed notice of Bidding Procedures, auction date and the final hearing on any motions to sell Debtors' assets; and

(D) schedule the auction to be held before this Court, and a hearing to approve sale of Debtors' assets under an asset purchase agreement.

14. Debtors hereby requests that the Court approve certain bidding protections to Purchaser for the Sale that are customary in similar circumstances (the "Bidding Protections"), including: (a) a break up fee in the amount of $240,000.00, if the Debtors terminate said acquisition agreement for any reason other than the breach of the acquisition agreement by

Purchaser (the "Break-up Fee") [or alternatively, a topping fee in the amount of $240,000.00 if a successful higher and better bid at the Auction that is approved by the Court closes on a transaction with the Debtors for the Assets]; and (b) an initial overbid calculated as follows: for purposes of determining whether a higher, but not necessarily better, but has been proffered, any bid received by Debtors at or prior to the Auction (except the Stalking Horse Bid), must exceed the Purchase Price under the Stalking Horse Bid (the amount of which is quantified by Debtor in good faith and announced prior to the Auction) by no less than the sum of (A) an additional $400,000.00 (the "Initial Overbid"); and (B) bidding increments after the Initial Overbid shall be made in minimum increments of $100,000.00, as determined by Debtor in its reasonable business judgment.

### The Assumed Contracts

15. The Bidding Procedures provide that a Conforming Qualifying Bid must identify each and every executory contract and unexpired lease, the assumption and assignment of which the Conforming Qualifying Bid is conditioned (the "Assumed Contracts"). As a result thereof, the Debtors will seek to assign the Assumed Contracts to the purchaser(s) of the Alamo Assets (collectively, the "Buyer(s)") at the time of the closing of the sale(s) (the "Closing"). Therefore, the Debtors will file a notice of potential assumption and assignment of Assumed Contracts (the "Cure Notice"), with the Court and serve such Cure Notice on each counterparty to the Assumed Contracts (each, a "Counterparty"). The form of Cure Notice will be established pursuant to motion and order to be submitted ("Cure Order").

16. The Cure Notice will (a) describe the Assumed Contract, (b) state the cure amount that the Debtors believe is necessary to cure all defaults due and owing under section 365 of the Bankruptcy Code (the "Cure Amount"), (c) notify each Counterparty that such party's executory contract or unexpired lease may be assumed by the Debtors and assigned to the Buyer(s) and that

the Cure Amount included in the Cure Notice will be deemed to cure all defaults under section 365 of the Bankruptcy Code unless the Counterparty timely files an objection to (i) the Cure Amount and/or (ii) the assumption and assignment of the Assumed Contract, including, but not limited to, whether the Assumed Contract may be assumed and assigned under section 365 of the Bankruptcy Code, on or before 4:00 p.m. (prevailing San Antonio time) on the day that is twenty-one (21) days after the Cure Notice is served. Objections will be heard at the Sale Hearing (as defined herein) or an earlier date as established by Debtors' motion. Any counterparty to an Assumed Contract who does not file a timely objection shall be deemed to have agreed to (i) the Cure Amount set forth in the Cure Notice and (ii) the assumption and assignment of the Assumed Contract.

17. At the Sale Hearing, the Debtors shall request the entry of an order authorizing, but not requiring, the assumption of the Assumed Contracts and the assignment of the Assumed Contracts to the Buyer(s). The Debtors, however, reserve the right to withdraw the request to assume any and all of the Assumed Contracts at any time before the closing of the sale(s) of the Alamo Assets to the Buyer(s) by filing and serving a notice of withdrawal of such request.

## After the Auction

18. After the Auction, the bid(s) for the Alamo Assets that the Debtors determine, in their sole discretion, to be the highest and best offer(s) (collectively, the "Final Accepted Bid(s)") will be submitted to the Court at the hearing to consider such bid (the "Sale Hearing"). The Debtors shall seek approval of the Final Accepted Bid(s) at the Sale Hearing; provided, however, that pursuant to the Bidding Procedures, the Debtors reserve the right to reject any and all bids, including Conforming Qualifying Bids.

## Applicable Authority

I.      **The Proposed Sale(s) Is Proper and Should Be Approved**

19. The Debtors submit that ample authority exists for the approval of the proposed Sale(s) of the Alamo Assets  pursuant to the executed form(s) of the Alamo Asset Purchase Agreement . Section 363(b)(1) of the Bankruptcy Code, which authorizes a debtor to sell assets of the estate other than in the ordinary course of business free and clear of liens, claims and encumbrances, provides, in relevant part, as follows:  "The [debtor-in-possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1); see also FED. R. BANKR. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction.").

20. Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts in the Sixth Circuit have broad discretion to authorize a sale or other disposition of assets under section 363(b) of the Bankruptcy Code. Stephen Industries, Inc. v. McClung, 789 F.2d 386, 388 (6th Cir. 1986) (authorization to sell or dispose of assets reviewed "under an abuse of discretion standard").  Courts in this circuit employ a flexible, case by case approach.  In re Baldwin United Corp., 43 B.R. 905 (Bankr. S.D. Ohio 1984).  The key consideration is the court's finding that a "sound business purpose dictates such action."  Stephens Indus., 789 F.2d at 390.

21. Courts have also required a debtor to establish the following additional elements to sell property outside the ordinary course of business: (a) adequate and reasonable notice has been provided to interested parties, 11 U.S.C. § 363(b), (b) the sale price is a fair and reasonable price, Lounds v. Boyd (In re Lounds), 1998 U.S. Dist. LEXIS 10925 (W.D. Mi. 1998); In re Lionel Corp., 722 F.2d 1063, 1071 (2nd Cir. 1983); accord Stephens Indus., 789 F.2d at 389-90 (quoting

and adopting as persuasive the reasoning of In re Lionel); and (c) the sale was negotiated in good faith, In re Embrace Sys. Corp., 178 B.R. 112, 126 (Bankr. W.D. Mi. 1994).

22. A sound business purpose dictates the relief requested herein, which is also supported by adequate and reasonable notice, a fair and reasonable sale price and a Sale(s) negotiated in good faith.

### A. A "Sound Business Purpose" Supports the Sale(s).

23. The Debtors' operations are not generating sufficient revenue to maintain the Debtors' businesses as a going concern without additional credit support or other liquidity, which is not available other then PNC's DIP financing. The Debtors believe that the value of the Alamo Assets as a whole is greater than as a piecemeal liquidation, and a prompt sale(s) will minimize the administrative expenses of the estates, but only if a prompt sale occurs. The Bidding Procedures provide the Debtors with a mechanism to seek out potential purchasers of the Alamo Assets that will compete to purchase such assets at the Auction. This enables the Debtors to test the market value for the Alamo Assets and ensure that the Sale(s) will maximize the value of such assets.

24. Additionally, the Sale(s) of the Alamo Assets to the extent sold as a whole, will increase the probability that the jobs of the Debtors' employees will be preserved. Therefore, the Debtors have determined that the Sale(s) of the Alamo Assets is in the best interests of their estates and creditors.

### B. Ample Notice of the Proposed Sale(s) Will Be Provided to Interested Parties.

25. The Debtors will employ various methods of notification to ensure that all interested parties will be informed of the Sale(s) and to maximize the exposure to interested parties. In order to generate the greatest number of bidders possible for the Alamo Assets and to satisfy the requirements of Bankruptcy Rule 2002, the Debtors propose to serve by first class mail, as soon

as practicable after the date that the Court enters the order approving the Bidding Procedures, the Notice of Auction (as defined in the Biding Procedures), upon (i) the Office of the United States Trustee, (ii) all parties who have requested notice pursuant to Bankruptcy Rule 2002, (iii) Cox Smith Matthews, Carol E. Jendrzey, local counsel to PNC, (iv) McGlinchey Stafford, PLLC, Richard Aguilar, counsel to PNC, (v) Gardere Wynne Sewell LLC, counsel for Alamo, (vi) Tony Wolf of BDO, (vii) counsel to any statutory committee appointed in these Chapter 11 Cases, (viii) counsel for the agent for the proposed debtor-in-possession lenders; (ix) federal, state and local regulatory and taxing authorities that are reasonably ascertainable by the Debtors to have a known interest in the Alamo Assets, (x) those parties identified by the Debtors (and their representatives) as potential purchasers of the Alamo Assets, (xi) all parties to the Debtors' executory contracts and unexpired leases and (xii) those entities listed on the Debtors' Creditor Matrix and the list of the Debtors' equity interest holders of record submitted to the Court.

26. In addition, as soon as practicable after the date the Court enters the Bidding Procedures Order, the Debtors propose to cause a notice ("Publication Notice"), to be published trade publications and newspapers of general circulation in Bexar County, in Texas and nationally.

      **C.**     **The Proposed Sale(s) Is For a Fair and Reasonable Price.**

27. The use of the Stalking Horse Bid and the Publication Notice will adequately test the market to achieve the highest and best price(s) for the Alamo Assets, given the exigent circumstances. These efforts are designed to yield interested parties, whose bids will be subject to an auction to determine the highest and best price(s) for the Alamo Assets. Because the purchase price(s) of the Alamo Assets will be determined by the Auction, it will be fair and reasonable as contemplated by section 363 of the Bankruptcy Code. See, e.g., In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149 (3d. Cir. 1986) (finding that "[g]enerally

speaking, an auction may be sufficient to establish that one has paid 'value' for the assets of a bankrupt"); In re National Health & Safety Corp., 1999 WL 703208 *2 (Bankr. E.D.Pa. Sept. 02, 1999) (citing Abbotts Dairies for the proposition that an auction may be sufficient to establish that one has paid value for the assets of a debtor and relying upon the result from the auction to verify that the purchase price represented value).

### D.    The Proposed Sale(s) Will Be Negotiated in Good Faith

28. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

29. Although the Bankruptcy Code does not define "good faith purchaser," courts construing section 363(m) of the Bankruptcy Code have stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." Abbotts Dairies, 788 F.2d at 147.  To constitute lack of good faith, a court must find "fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted 'an attempt to take grossly unfair advantage of other bidders." 255 Park Plaza Assocs. Ltd. Pshp. v. Connecticut Gen. Life Ins., 100 F.3d 1214 (6th Cir. 1996) (citing In re Onouli-Kona Land Co., 846 F.2d 1170, 1173 (9th Cir. 1988)).  See also Miami Ctr. Ltd. Partnership v. Bank of New York, 838 F.2d 1547 (11th Cir. 1988); Hoese Corp. v. Vetter Corp. (In re Vetter Corp.), 724 F.2d 52, 56 (7th Cir. 1983); In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978); In re Bedford Springs Hotel, Inc., 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); Matter of Perona Bros., Inc., 186 B.R. 833, 839 (D.N.J. 1995).  Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale

proceedings." In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting Rock

Indus. Machinery, 572 F.2d at 1198).

30. As required by section 363(m) of the Bankruptcy Code, the Debtors and the Buyer(s)

will act in good faith in negotiating the Final Asset Purchase Agreement(s) (as defined in the

Bidding Procedures). The Final Asset Purchase Agreement(s) will be the product of good faith,

arm's length negotiations between the Debtors and the Buyer(s), and will be negotiated with the

active involvement of the Debtors' officers and representatives.

31. The Bidding Procedures establish a process whereby interested parties compete to

establish the value of the Alamo Assets. The Auction will result in a bid(s) for the Alamo Assets

that represents substantial value to the Debtors' estates because it will provide favorable terms

for the disposition of such assets for a price that represents the market values of the assets. See

Abbotts Dairies, 788 F.2d at 149. Accordingly, the Debtors request that the Court make a finding

that the Buyer(s) is entitled to the protections of section 363(m) of the Bankruptcy Code.

**II.    Sale(s) of the Alamo Assets  Free and Clear of Liens, Claims and Encumbrances**

32. The Debtors propose to sell the Alamo Assets pursuant to section 363(b) and (f) of the

Bankruptcy Code which, among other things, authorizes a debtor to sell property outside of the

ordinary course of business, free and clear of any interest, lien, claim, encumbrance or security

interest of any other party, including, but not limited to, any administrative expense or priority

claim asserted in these Chapter 11 Cases (collectively, "Liens"). Specifically, section 363(f) of

the Bankruptcy Code states:

> (f)     The trustee may sell property under subsection (b)
> or (c) of this section free and clear of any interest in such property
> of an entity other than the estate, only if --
>> (1)     applicable nonbankruptcy law permits
>> sale of such property free and clear of such interest;
>> (2)     such entity consents;

(3)　　such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)　　such interest is in bona fide dispute; or

(5)　　such entity could be compelled, in a legal or equitable proceeding to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); see In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met); In re Shary, 152 B.R. 724, 725 (Bankr. N.D. Ohio 1993).

33. To the extent that any Liens, other than the permitted Liens (if any) set forth in the Final Asset Purchase Agreement(s), relate to the Alamo Assets pursuant to section 363(f) of the Bankruptcy Code, such assets should be sold free and clear of such Liens. Liens on the Alamo Assets , if any, are capable of being satisfied by money, and should transfer and attach to the net proceeds of the Sale(s) with the same validity, priority, force and effect that the Liens had on the Alamo Assets immediately prior to the Closing, subject to further order of this Court and subject to the rights and defenses, if any, of the Debtors and any other party in interest with respect thereto.

34. The Sale(s) satisfies the criterion set forth in section 363(f) of the Bankruptcy Code. The Debtors will provide notice of the Sale(s) to all parties who are creditors and therefore all parties who could potentially assert Liens against the Alamo Assets. Any holder of an alleged Lien against the Alamo Assets could be compelled, in a legal or equitable proceeding, to accept a monetary satisfaction equal to the amount of their claim, or interests in, such assets.

35. Accordingly, the Debtors submit that the Sale(s) of the Alamo Assets free and clear of any Liens satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

## III. Assumption and Assignment of Certain Executory Contracts and Unexpired Leases

36. The Debtors will seek authority to assume and assign the Assumed Contracts to the Buyer(s) under section 365 of the Bankruptcy Code. Assumption and assignment or rejection of executory contracts and unexpired leases are an integral part of the proposed Sale(s) and should be approved by the Court.

37. Section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume an executory contract or unexpired lease subject to the Court's approval. Section 365(b) of the Bankruptcy Code requires such debtor in possession to satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed.

38. Section 365 of the Bankruptcy Code states in relevant part:

> (a) Except as provided in…subsections (b), (c), and (d) of this section, the [debtor in possession], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee --

>> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

>> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

>> (C) provides adequate assurance of future performance under such contract or lease.

> (f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection…

> (2) The trustee may assign an executory contract or unexpired lease of the debtor only if --

> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

> (B) adequate assurance of future performance by the assignee or such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(a), (b)(1), (f). Accordingly, section 365 of the Bankruptcy Code authorizes the proposed assumption and assignments of the Assumed Contracts, provided that the defaults under the Assumed Contracts are cured and adequate assurance of future performance is provided.

39. The standard that is applied by this Court in determining whether an executory contract or unexpired lease should be assumed is the debtor's "business judgment." See In re Hurricane Elkhorn Coal Corp. II, 15 B.R. 987, 989 (Bankr. W.D. Ky. 1981) ("we think the business judgment rule to be the preferable standard"); see also NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (describing the business judgment test as traditional"); Phar-Mor, Inc. v. Strouss Bldg. Assocs., 204 B.R. 948, 952 (N.D. Ohio 1997) ("Courts should generally defer to a debtor's decision whether to reject an executory contract.").

40. Adequate business justifications merit judicial approval to assume the Assumed Contracts. As noted above, the Debtors have determined that it is in the best interest of their estates to sell the Alamo Assets. The Assumed Contracts are important assets, which are necessary to operate the Debtors' business; moreover, following the Sale, the Debtors will have no means to perform and complete the contracts; certain of the contracts have provisions for forfeiture of retainage and for liquidated damages for non-performance. The Assumed Contracts are critical to the transaction and their assignment to the Buyer(s) is a condition to the Sale(s) of the Alamo Assets. A prerequisite to the assignment of an executory contract or unexpired lease is its assumption under section 365 of the Bankruptcy Code. Accordingly, based on the

foregoing, and the importance of the assignment of the Assumed Contracts, the assumption thereof is a product of the Debtors' sound business judgment.

41. In order to assign an executory contract or unexpired lease that has been assumed, the counterparty must be provided with adequate assurance of future performance. See 11 U.S.C. § 365(f). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See In re Bygaph, Inc., 56 B.R. 596, 605-606 (Bankr. S.D.N.Y. 1986) (adequate assurance is present when assignee has financial resources and has expressed a willingness to devote sufficient funding to business to give it a strong likelihood of succeeding); In re Natco Industries, Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985).

42. Pursuant to section 365 of the Bankruptcy Code and in accordance with the Final Asset Purchase Agreement(s), each Counterparty owed a cure amount for their Assumed Contract will be provided with a cure payment or adequate assurance of such payment. Moreover, the Buyer(s) will have the financial capabilities to satisfy any and all obligations it will incur in connection with the contracts and leases to be assumed and assigned to the Buyer(s) under the Final Asset Purchase Agreement(s).

## IV.     Exemption from Transfer Taxes

43. Pursuant to section 1146 of the Bankruptcy Code, the "transfer… or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp or similar tax." 11 U.S.C. §1146(c). This provision has been broadly construed to include sales and transfers which occur outside a chapter 11 plan and before or after plan confirmation, provided that such sales and transfers enable the confirmation and consummation of a chapter 11 plan for the Debtors. In re Service Merchandise Co., 2000 Bankr. LEXIS 1523 (Bankr. M.D. Tn. 2000).

44. The Sale(s) of the Alamo Assets is essential to the consummation of a plan, and therefore should be deemed to be "under a plan" for purposes of section 1146(c) of the Bankruptcy Code. The Debtors intend to use the net Sale(s) proceeds to satisfy claims asserted against the Debtors. Accordingly, the Debtors submit that the Sale(s) of the Alamo Assets falls within the scope of the exemption provided for under section 1146(c) of the Bankruptcy Code.

## V.     The Court Should Waive or Reduce the Fourteen Day Stay Periods Required by Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure

45. Pursuant to Bankruptcy Rule 6004(g), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for **14 days** after entry of the order, see FED. R. BANKR. P. 6004(g) (added by the 1999 Amendments to the Federal Rules of Bankruptcy Procedure). The purpose of Bankruptcy Rule 6004(g) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. See Advisory Committee Notes to Bankruptcy Rule 6004(g).

46. Although Bankruptcy Rule 6004(g) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier on Bankruptcy suggests that the 14 (formerly 10)-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999). Furthermore, Collier on Bankruptcy provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. Id.

47. Similarly, Bankruptcy Rule 6006(d) stays all orders authorizing a debtor to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code for ten days, unless the court orders otherwise.

20

48. To preserve the value of the Alamo Assets and limit the costs of administering and preserving such assets, it is critical that the Debtors close the Sale(s) of the Alamo Assets as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtors hereby request that the Court waive **the 14 day** stay periods under Bankruptcy Rules 6004(g) and 6006(d) or in the alternative, if an objection to the Sale(s) or an assignment of a contract or lease is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal to allow the Sale(s) to close as provided under the Final Asset Purchase Agreement(s).

49. Based upon the foregoing, the Debtors submit that the relief requested herein is necessary and appropriate, is in the best interests of the Debtors and their estates, and should be granted in all respects.

## Notice

50. Notice of this Sale Motion has been given to (i) the Office of the United States Trustee, (ii) Cox Smith, Carol E. Jendrzey, counsel to PNC, (iii) Gardere Wynne Sewell LLC, counsel for Alamo, (iv) Tony Wolf for DBO, (v) counsel for the agent for the proposed debtor-in-possession lenders; (vi) federal, state and local regulatory and taxing authorities that are reasonably ascertainable by the Debtors to have a known interest in the Alamo Assets, (vii) those parties identified by the Debtors (and their representatives) as potential purchasers of the Alamo Assets, (viii) all parties to the Debtors' executory contracts and unexpired leases, and (ix) the creditors listed on the Debtors' list of twenty largest unsecured creditors filed in these Chapter 11 Cases. Notice will also be given as set forth in paragraph 23 herein. In light of the nature of the relief requested, the Debtors submit that no further notice is required and request that such notice be deemed sufficient and adequate notice under the circumstances.

### No Prior Request

51. No previous motion for the relief requested herein has been made to this or any other court.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) (a) authorizing the Debtors' Sale(s) of the Alamo Assets , free and clear of liens, claims and encumbrances subject to higher and better offers, (b) approving the Alamo Asset Purchase Agreement, and (c) approving Bidding Procedures in connection with such Sale(s); and (ii) granting such other and further relief as the Court deems appropriate.

[continued on next page]

Dated: April 8, 2010

Respectfully submitted,

LANGLEY & BANACK, INCORPORATED
Suite 900, Trinity Plaza II
745 East Mulberry
San Antonio, TX 78212-3166
Telephone: (210)-736-6600
Fax: (210) 735-6889
E-mail: dgragg@langleybanack.com

By: _____
DAVID S. GRAGG
Texas Bar No. 08253300
STEVEN R. BROOK
Texas Bar No. 03042300
ALLEN DeBARD
Texas Bar No. 24065132

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS-IN-POSSESSION

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 8, 2010, true and correct copies of the foregoing Motion was served upon those creditors and interested parties reflected on the attached limited service established in these cases and by electronic means to those ECF/PACER participants.

**United States Trustee:**
James W. Rose, Jr.
P.O. Box 1539
San Antonio, TX 78295-1539

_____
DAVID S. GRAGG