# EXHIBIT "B"

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CHAPTER 11 |
| ALAMO IRON WORKS, INC., et al. | § | |
| | § | CASE NO. 10-51269 |
| Debtors. | § | |
| | § | Jointly Administered |

### AFFIDAVIT OF HARRISON L. PRICE IN SUPPORT OF THE DEBTORS' EMERGENCY APPLICATION TO EMPLOY BDO CAPITAL, LLC AS DEBTORS' INVESTMENT BANKER

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

Before me, the undersigned authority, appeared this day HARRISON L. PRICE who, being by me duly sworn, upon his oath deposed and said:

1. "My name is Harrison L. Price. I am of sound mind, over the age of twenty-one, have never been convicted of any crime, and am fully competent to make this affidavit. I am a managing director in the firm of BDO Capital Advisors, LLC ("BDO Capital").

2. "I am submitting this Affidavit in support of the Debtors' Emergency Application to Employ BDO Capital as Debtors' Investment Banker ("Application"), for purposes of making all required disclosures pursuant to Rule 2014 of the FEDERAL RULES OF BANKRUPTCY PROCEDURE and to advise the Court of BDO Capital's qualifications.

3. "I have personal knowledge of each of the facts stated in this Affidavit, except for those facts stated on information and belief, and as to those facts, I am informed and believe them to be true. If called as a witness, I would testify as to the matters set forth below based upon my personal knowledge, except where otherwise indicated. To the extent that I obtain additional information which requires further disclosure or modification of the Application or this Affidavit, a supplemental affidavit will be submitted to the Court.

4. "Based on my knowledge of the issues to be addressed in the case, I believe BDO Capital's representation of the Debtors will involve the issues and require the services described in

the Application. To the best of my knowledge, BDO Capital and the professionals it employs are qualified to represent the Debtors.

5. "I do not hold an interest adverse to the interests of the estates and the Debtors, nor do we have any relationship, direct or indirect, with the Debtors or any other party claiming an interest in the Debtors, the attorneys or accountants for the Debtors, creditors or interested parties, the U.S. Trustee, or any person employed by the office of the U.S. Trustee.

6. "In relation to the Debtors, BDO Capital and its parent, BDO Seidman, LLP ("BDO"):

    (a) is not an equity security holder or an insider;

    (b) is not and was not an investment banker for any outstanding security of the Debtors;

    (c) has not been, within three years before the date of the filing of the petitions, an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors;

    (d) is not and was not, within two years before the date of the filing of the petitions, a director, officer, or employee of the Debtors or of an investment banker specified in subparagraph (b) or (c) of this paragraph; and

    (e) does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker specified in subparagraph (b) or (c) of this paragraph, or for any other reason, with respect to the matter for which BCCA is to be engaged.

7. "To my knowledge, and subject to the disclosures of creditors and other parties-in-interest made known to me to be the only significant creditors and other significant parties-in-interest in this matter, BDO Capital does not have any business relationships with those parties which are or may be creditors of the Debtors, or any other party in interest herein except as specified below, which each represent less than .5% of the Firm's annual revenue:

    (a) BDO performed and completed limited tax services, risk advisory services, and is currently performing risk valuation services for PNC Bank and/or its affiliate PNC Equipment Finance; and

    (b) BDO performed and completed limited tax services for Sherwin Williams."

8.  "From time to time, BDO Capital and its parent, BDO, have been retained and likely will continue to be retained by certain of the Debtors' creditors but it is the intention of both BDO Capital and BDO to use commercially reasonable efforts to limit any such engagements to matters unrelated to these chapter 11 cases. BDO Capital and BDO are undertaking a detailed search to determine, and to disclose, whether they represent or have represented any significant creditors, equity security holders, insiders or other parties-in-interest in any unrelated matters. To the extent that I have been provided with the names of significant creditors and parties-in-interest, BDO Capital and BDO are performing a review of potential connections and relationships between BDO Capital, BDO and (i) the Debtors; (ii) Related Entities; (iii) Significant Shareholders; (iv) Prepetition Lenders; (v) Secured Lenders; (vi) the Debtors' 20 largest unsecured creditors as identified in the Debtors' chapter 11 petitions; and (vii) professionals retained by the Debtors and their secured creditor. In connection, therewith, BDO Capital and BDO are searching their internal database, have sent out e-mails to all of their employees and are investigating all responses to its search. Despite commercially reasonable efforts to identify and disclose BDO Capital's and BDO's connections with parties in interest in this case, as made known to me in writing, because BDO has a large national practice and serves clients through over 30 offices and because the Debtors are a large enterprise with hundreds of creditors and other relationships, I am unable to state with certainty that every client representation or other connection has been disclosed. In this regard, if either BDO Capital or BDO discovers additional information that requires disclosure, BCCA will file a supplemental disclosure with the Court as promptly as possible."

9.  Prior to the Petition Date BDO Capital received no compensation of any nature from the Debtors .

10. "In light of the foregoing, I believe BDO Capital is 'disinterested,' within the meaning of 11 U.S.C. §§ 101(14) and 327, and that the employment of BDO Capital as Debtors' investment banker is appropriate and should be approved. I reserve the right to supplement this Affidavit."

11. "The general nature of services that BDO Capital will perform may include, but are not limited to, the following as requested by the Debtors and agreed to by BDO Capital:

(a) preparing it for an expedited sale of assets under §363 of the Code;

(b) assisting the Company in establishing criteria for potential qualified purchasers and bidding procedures;

(c) preparing certain information to support disclosure for purchasers, and coordinating the distribution of that material;

(d) identifying, screening and ranking prospective qualified purchasers;

(e) evaluating proposals received from potential purchasers;

(f) advising the Company as to strategy and tactics to achieve the highest and best alternatives from a sale;

(g) organizing and conducting an auction, as directed by procedures approved by the bankruptcy court;

(h) recommending to the Company "highest or best" alternative for submission to the bankruptcy court;

(i) testifying in bankruptcy court as may be required to fulfill its other duties under this agreement;

(j) assisting the Company and its advisors through the closing process; and

(k) supporting the Company in such matters as the Company shall request from time to time.

12. "A copy of the Engagement Letter entered into by BDO Capital and the Debtors prepetition is attached to the Application and incorporated herein."

13. "Any request by BDO Capital for compensation for professional services rendered for the Debtors shall be based upon the time expended to render such services and at billing rates commensurate with the experience of the person performing such services and will be computed at the hourly billing rates agreed to by the parties, which in some cases is below the rate customarily charged by BDO Capital for such services. Expenses will be charged at actual costs incurred (and will include charges for copying, travel, telephone, computer rental, etc.)."

14. "The hourly billing rates as of the date of this Affidavit are as follows for the professionals of BDO Capital, but subject to change in the ordinary course of its business: BDO Capital's standard rates normally charged are:"[2]

| **Title** | **Fees** |
| --- | --- |
| Managing Directors | $600 – 700 per hour |
| Principals | $300 – 600 per hour |
| Vice Presidents | $225 – 500 per hour |
| Associates | $200 – 350 per hour |
| Staff | $125 - 225 per hour |

15. "Upon the closing of a sale, whether by merger, stock sale or asset sale, pursuant to a bankruptcy process - in one or more transactions of all or substantially all of the operating assets of

---

[2] The rates in this chart include those normally charged by BDO Capital.

the Company, BDO Capital shall be entitled to a transaction fee payable in cash out of the proceeds at closing in the amount of five percent (5.0%) of Consideration in excess of the amount of the "Stalking Horse" bid as originally filed with the court. Fees relating to future payments that may be contingent will be paid to BDO Capital on the date on which such payments are due or by mutual agreement of the parties.

16. "In connection with the submission of periodic billings, detailed descriptions for each professional of the services performed by them, and the time expended on the engagement by each professional for all relevant engagement activity categories, will be provided. In addition, reasonable out-of-pocket expenses, including travel, report production, delivery services, and other costs incurred in providing the services are included, at actual cost, in the total amount billed. In the normal course of business, BDO Capital revises its regular hourly rates to reflect changes in responsibilities, increased experience, and increased costs of doing business. Accordingly, BDO Capital requests that the aforementioned rates of BDO Capital be revised to the regular hourly rates, which will be in effect from time to time. Changes in regular hourly rates will be noted on the invoices for the first time period in which the revised rates became effective."

17. "BDO Capital intends to apply to the court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules of the Western District of Texas and any orders entered by the Court. BDO Capital has agreed to accept as compensation such sums as may be allowed by the Court based upon the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in this case. BDO Capital understands that interim and final fee awards are subject to approval by the Court."

18. "BDO Capital is a wholly owned subsidiary of BDO. All hourly fees will be within the ranges specified above and commensurate with the experience and expertise of the personnel in question. Such personnel and their status (i.e. BDO Capital employee, and level) shall be clearly identified on the detail time entries incorporated in any application for compensation submitted. All obligations to such personnel will be on an hourly basis plus expenses and shall be the sole responsibility of BDO Capital."

19. In accordance with section 504 of the Bankruptcy Code, no agreement or understanding exists between me or BDO Capital, on the one hand, and any other person, on the other hand, for the sharing of compensation as BDO Capital may receive in connection with services rendered in this case, nor will any division of fees prohibited by section 504 of the Bankruptcy Code be made by me, or any employee of BDO Capital. This is, however, subject to the normal inter-company settlement procedures between BDO Capital on the one hand, and its parent, BDO or its affiliate BDO Consulting Corporate Advisors on the other.

be made by me, or any employee of BDO Capital. This is, however, subject to the normal inter-company settlement procedures between BDO Capital on the one hand, and its parent, BDO or its affiliate BDO Consulting Corporate Advisors on the other.

21. As set forth above, BDO Capital respectfully requests that it be retained effective as of April 8, 2010, and all services rendered by BDO Capital to the Debtor from that date forward be deemed authorized pursuant to this Court's Order.

Further, affiant said nothing.

HARRISON L. PRICE
Managing Director of BDO CAPTIAL ADVISORS, LLC

SWORN TO AND SUBSCRIBED before me, the undersigned authority, this 8th day of April, 2010.

Notary Public, State of Texas

STACEY RENEE SOLANO
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES
01-16-2013